**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Matthew MYERS, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 26, 2013.

Filed Feb. 21, 2014.

---

Stuart R. Crichton, West Chester, for appellant.

Nicholas J. Casenta, Jr., Assistant District Attorney and Erik T. Waschburger, Assistant District Attorney, West Chester, for Commonwealth, appellee.

BEFORE: DONOHUE, J., WECHT, J., and STRASSBURGER, J.*

OPINION BY WECHT, J.:

Matthew Myers challenges the judgment of sentence entered on October 4, 2012. For the reasons that follow, we affirm Myers' judgment of sentence, but remand for further proceedings concerning Myers' bail status.

The trial court has provided the following account of the factual history underlying Myers' conviction:

On May 13, 2011, [Myers'] Cadillac DeVille was towed to Pep Boys in Exton, Pennsylvania, at the request of [Myers]. A new alternator was installed in [Myers'] vehicle and an extended warranty was sold with the alternator. The total cost for work and labor was $605.80. Before the work was completed on the vehicle, the Assistant Service Manager, Robert McManus, spoke with [Myers] to inform [him] what was wrong with the vehicle and to obtain verbal authorization from [Myers] to proceed with fixing the vehicle. [Myers] was informed of the repair costs at that time. [Myers] provided the verbal authoriza-

---

* Retired Senior Judge assigned to the Superior Court.

tion necessary for [Pep Boys] to fix the vehicle. On May 14, 2011, [Myers] arrived at Pep Boys to retrieve his vehicle. Andrew Benes, a service advisor at Pep Boys, was working the front desk on that day and presented the work order to [Myers]. The work order reflected the total cost of repairs of $605.80. [Myers] did not dispute the bill. [Myers] patted his jacket and pants pockets as if searching for a wallet and then told Mr. Benes that his checkbook was in his vehicle. [Myers] asked Mr. Benes for his car keys so that he could retrieve the checkbook from his car. Mr. Benes gave [Myers] his keys so that [Myers] could retrieve his checkbook. [Myers] walked to his vehicle and entered on the passenger side of the vehicle. While in the passenger seat, [Myers] rifled through his glove box. [Myers] then shut the passenger door and slid over to the driver's seat. When [Myers] started the car, Mr. Benes realized that [Myers] was about to drive away and Mr. Benes ran outside and tried to wave [Myers] down. As he sped away, [Myers] made eye contact with Mr. Benes, waved and smiled. Mr. Benes immediately contacted the police. Additionally, Mr. Benes and his supervisor attempted to contact [Myers] by phone and left voice messages, but [Myers] never responded. [Myers] never returned to Pep Boys.

Trial Court Opinion ("T.C.O."), 2/8/2013, at 1–2 (record citations omitted).

Based upon the above, evidence, on August 16, 2012, Myers was convicted by a jury of theft of services, theft by unlawful taking or disposition, and receiving stolen property.[1] Myers was charged based upon the allegation that, after a Pep Boys service station repaired his car, he drove away from the facility without paying for the parts and services rendered.

On October 4, 2012, Myers was sentenced in the standard range of the sentencing guidelines to an aggregate six to twenty-three months' incarceration, to be followed by two years' probation. On October 5, 2012, Myers filed post-sentence motions. Among his claims for relief, Myers asked the court to defer his reporting date and asserted a request for bail pending appeal. Post Sentence Motion for Reconsideration, for Appointment of Counsel, 10/5/2012, at 2–3 ¶¶ 6–10 (unpaginated). The trial court denied Myers' motion on the same day.[2] On October 17, 2012, Myers filed a notice of appeal, and, on October 22, 2012, new counsel was appointed for the purpose of pursuing that appeal.

On October 23, 2012, the trial court ordered Myers to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) within twenty-one days. On November 7, 2012, Myers filed a motion requesting an extension of the time to file his Rule 1925 statement, which was granted by trial court order entered on November 8, 2012. In that order, the trial court afforded thirty additional days from that date for Myers to file his concise statement. Myers filed his concise statement on December 12, 2012.

■ We pause to note that, unfortunately, the order extending the time for filing of the Rule 1925(b) statement is ambiguous on its face. The November 8, 2012 order provided as follows: "Petition for

---

1. *See* 18 Pa.C.S. §§ 3926, 3921, 3925, respectively.

2. The trial court offered no explanation of its basis for denying Myers' motion. In connection with bail, as set forth below at length, the court is directed to "state on the record the reasons for [its] decision" to modify or revoke a standing bail order. Pa.R.Crim.P. 521(C). That did not happen in this case.

Extension of Time for Filing Appellant's Statement pursuant to Pa.R.A.P. 1925(b)(2) is granted. Counsel shall comply with the Order dated 10/23/12, but Counsel will have an additional 30 days to file and serve the statement." This order left unclear whether the court intended to add thirty days to the twenty-one days afforded by the October 23 order or intended to grant counsel thirty days from its November 8 order to file the Rule 1925(b) statement. This ambiguity is problematic because, if the court intended the latter calculation, Myers' Rule 1925(b) statement was untimely. Were that the case, then, we would be obligated as a matter of our rules of procedure to deem appellate counsel ineffective, and to remand the case for the filing of a Statement *nunc pro tunc*. *See* Pa.R.A.P. 1925(c)(3).

While it is clear that, whatever else we may do, we may not consider the merits of an appeal when the Rule 1925 statement was untimely filed, *Commonwealth v. Castillo*, 585 Pa. 395, 888 A.2d 775, 780 (2005), we find that this rule does not apply under the circumstances of this case. In the interest of the just and expedient disposition of the instant appeal, and in light of the fact that the trial court filed a Rule 1925(a) opinion addressing in detail the issues Myers has raised for our consideration, we will construe the trial court's November 8, 2012 order as reflecting the court's intention to provide thirty days in addition to the twenty-one days provided in the October 23, order. Consequently, pursuant to the November 8 order, Myers had fifty-one days from October 23, to file his statement. The fifty-first day was December 13. Myers filed his Rule 1925(b) statement on December 12, 2012. Consequently, Myers' statement was filed timely, and we may address the merits of his appeal.

Before this Court, Myers raises the following issues:

I. Whether the Trial Court erred by denying Appellant's postsentence motion for reconsideration of sentence and Appellant's motion for bail pending appeal?

II. Whether [Myers'] conviction on the charges of Theft By Unlawful Taking, Receiving Stolen Property and Theft of Services were against the sufficiency of the evidence presented?

Brief for Myers at 3.[3]

In the interests of clarity, we address ourselves first to Myers' unavailing suffi-

---

**3.** Myers' perfunctory sentencing challenge is waived. To the extent Myers makes any argument at all, it consists of the following:

> In this matter, [Myers] was sentenced to six (6) to twenty-three (23) months of incarceration followed by a probationary period. The sentence was within the sentencing guidelines. [Myers] was employed and provided for his three children. [Myers] accepted the verdict and appeared remorseful at sentencing for the incident. [Myers] contends that the Court focused mainly on his past criminal history. The motion for reconsideration was filed to address with the Court the positives concerning Appellant: that he cares and provides for three children, that he was employed full-time and that he was remorseful concerning the entire incident.

Brief for Myers at 7. An assertion that a given sentence is excessive constitutes a challenge to the discretionary aspects of that sentence. *Commonwealth v. Ahmad*, 961 A.2d 884, 886 (Pa.Super.2008). In order to preserve such a challenge for purposes of appeal, an appellant must provide "a concise statement of reasons for allowance of appeal demonstrating a substantial question that the sentence imposed was not appropriate under the Sentencing Code." *Commonwealth v. Penrod*, 396 Pa.Super. 221, 578 A.2d 486, 490 (1990); *see* Pa. R.A.P. 2119(f). When an appellant fails to provide such a statement (not to mention no material argument to the effect that his challenge presents a substantial question) and the Commonwealth objects to the omission, we must deem that challenge waived. *Commonwealth v. Bruce*, 207 Pa.Super. 4, 916 A.2d 657, 666–67 (2007). Accordingly, we will not

ciency challenge. *See id.* at 9–11. Our standard of review of a challenge to the sufficiency of the evidence to sustain a conviction is as follows:

> The standard for review of the sufficiency of the evidence is whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the factfinder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt.

*Commonwealth v. Eichinger,* 591 Pa. 1, 915 A.2d 1122, 1130 (2007) (citing *Commonwealth v. Ockenhouse,* 562 Pa. 481, 756 A.2d 1130, 1135 (2000)).

■ In support of his sufficiency challenge, Myers contends that the evidence failed to establish that he authorized the work performed on his vehicle. In support of this argument, he contends as follows:

> In the present matter, evidence was presented that [Myers'] Cadillac De[V]ille was towed to the Pep Boys in Exton.... After the vehicle arrived, Robert McManus, an employee with Pep Boys, contacted [Myers] and initially testified that[,] based on his recollection and review of the work order, [Myers] approved the work done that was listed in the work order. Mr. McManus stated that he spoke to [Myers] on May 13, 2011 "most likely twice" by telephone. The actual service on the Cadillac was performed by Theodore Turkowski. Mr. McManus later testified that he only remembered bits and pieces of the incident and that he "definitely called [Myers] the initial time. I could not remember the second, if it was me or somebody else." Mr. McManus went on

to state: "I would have been the one who talked to him on the analysis charge. The alternator, not 100 percent on that." Therefore, Mr. McManus could not recall whether he was the one who spoke to [Myers] and received the authorization to proceed with the work. This lack of evidence supports [Myers] version that he did not authorize Pep Boys to complete the work on his vehicle.

Brief for Myers at 9–10.

As noted *supra,* Myers was convicted of theft of services, theft by unlawful taking or disposition, and receiving stolen property. However, in his argument, he does not address his convictions discretely, or tailor his argument to the different elements that must be established to convict a defendant on each such charge. Rather, he relies solely on the above-stated testimony. Notably, he provides no authority or argument in support of the proposition that a lack of authorization is a defense to these crimes. However, we assume *arguendo* that, were his assessment of the evidence correct, he could prevail as to all charges.

The infirmity of Myers' contention is effectively set forth in his own argument. As set forth above, Myers concedes that, "based on his recollection and review of the work order, [Mr. McManus testified that Myers] approved the work done that was listed in the work order." Brief for Myers at 9; *see* Notes of Testimony ("N.T."), 8/15/2012, at 49 (Mr. McManus responding (during direct examination) "Yes" to the query "based on your recollection and review of the work order, did the customer who was responsible for this Cadillac DeVille approve the work done as listed on the work order?"). However, he argues that McManus' later testimony on cross-examination fatally undermined by

consider the merits of Myers' sentencing challenge.

Mr. McManus' uncertainty regarding whether Mr. McManus or another Pep Boys employee conducted a second phone call with Myers.

In effect, Myers does not contest that Mr. McManus testified that he obtained authorization from Myers. Instead, he notes that Mr. McManus later testified with some uncertainty regarding when calls were placed to McManus and who placed them. *See* N.T. at 61 ("I definitely called him the initial time. I could not remember the second, if it was me or somebody else.").

As noted, *supra*, in reviewing the sufficiency of the evidence, we defer to the jury's findings of fact, provided that there is evidentiary support in the record. In making our assessment, we review all evidence in the light most favorable to the Commonwealth as prevailing party, and we further grant the Commonwealth the benefit of all favorable inferences that may be drawn from that evidence. *See Eichinger, supra.* Mr. McManus undisputedly testified that Myers authorized the work performed upon Myers' vehicle. Thus, the evidence was sufficient to sustain his conviction over Myers' contention that he did not authorize the work in question.[4]

With respect to the trial court's denial of bail pending appeal pursuant to Pa. R.Crim.P. 521, we find that the trial court erred in effectively revoking Myers' standing non-monetary bail order without expressly doing so, and without adhering to the procedural requirements of Pa. R.Crim.P. 521, which provides, in relevant part, as follows:

### Rule 521. Bail After Finding of Guilt

\* \* \*

**(B) After Sentencing**

(1) When the sentence imposed includes imprisonment of less than 2 years, the defendant shall have the same right to bail as before the verdict, unless the judge, pursuant to paragraph (D), modifies the bail order.

\* \* \*

(3) When the defendant is released on bail after sentencing, the judge shall require as a condition of release that the defendant either file a post-sentence motion and perfect an appeal or, when no post-sentence motion is filed, perfect an appeal within the time permitted by law.

(C) Reasons for Refusing or Revoking Bail. Whenever bail is refused or revoked under this rule, the judge shall state on the record the reasons for this decision.

(D) Modification of Bail Order After Verdict or After Sentencing

(1) When a defendant is eligible for release on bail after verdict or after

---

**4.** Myers' contention that Mr. McManus' inconsistent testimony did not support the verdict arguably constitutes a challenge to the jury's weighing of the evidence, rather than the sufficiency of the evidence. A challenge to the weight of the evidence will be sustained only when it appears from the record "that the jury's verdict was so contrary to the evidence as to shock one's sense of justice." *Commonwealth v. Torres,* 396 Pa.Super. 499, 578 A.2d 1323, 1326 (1990) (quoting *Commonwealth v. Gamber,* 352 Pa.Super. 36, 506 A.2d 1324, 1329 (1986)). Pennsylvania Rule of Criminal Procedure 607(A) provides that a challenge to the weight of the evidence must be raised in a motion for a new trial that is presented orally, on the record, before sentencing, by written motion before sentencing, or in a post-sentence motion. *See Commonwealth v. Washington,* 825 A.2d 1264, 1265–66 (Pa.Super.2003). Myers neither asserts, nor does the record disclose, that he raised a challenge to the weight of the evidence by any of these means. Consequently, to the extent he intended to raise this issue, it is waived.

sentencing pursuant to this rule, the existing bail order may be modified by a judge of the court of common pleas, upon the judge's own motion or upon motion of counsel for either party with notice to opposing counsel, in open court on the record when all parties are present.

(2) The decision whether to change the type of release on bail or what conditions of release to impose shall be based on the judge's evaluation of the information about the defendant as it relates to the release criteria set forth in Rule 523. The judge shall also consider whether there is an increased likelihood of the defendant's fleeing the jurisdiction or whether the defendant is a danger to any other person or to the community or to himself or herself.

\* \* \*

[*Comment:* ] Unless bail is revoked, the bail bond is valid until full and final disposition of the case. *See* Rule 534. The Rule 534 *Comment* points out that the bail bond is valid through all avenues of direct appeal in the Pennsylvania courts, but not through any collateral attack.

Pa.R.Crim.P. 521.

■ Rule of Criminal Procedure 534 provides further insight into a defendant's bail status following sentencing but prior to the expiration of the time for filing an appeal, before which the judgment of sentence is not final. Specifically, Rule 534 provides that, "[u]nless bail is revoked, a bail bond shall be valid until the full and final disposition of the case, including all avenues of direct appeal to the Supreme Court of Pennsylvania." Pa.R.Crim.P. 534 (emphasis added). The comment explains that "[t]he intent of this rule is to continue the validity of the bail bond through all avenues of direct appeal in the state

courts, but to exclude state post-conviction collateral proceedings, federal appeals and post-conviction *habeas corpus* proceedings, or any other collateral attacks." Pa. R.Crim.P. 534 cmt.

Notably, our review of the record discloses no proper revocation of Myers' standing bond. Following arrest and before trial, Myers was released on an unsecured $25,000 bond, pursuant to Pa. R.Crim.P. 524(C)(3). As noted in the comment to Pa.R.Crim.P. 521, that bail bond, unless revoked, was "valid until full and final disposition of the case." Rule 534's contingent language "**unless** bail is revoked," viewed in tandem with the mandatory "**shall be valid** until the … final disposition of the case," merely reinforces the point: Whether at the request of the Commonwealth or Myers (ostensibly seeking more favorable bail conditions postconviction/sentencing than he enjoyed preconviction), or in the court's discretion exercised *sua sponte,* absent an affirmative effort to revoke or modify a standing bail order, Appellant's bond necessarily remained in effect, and his liberty on bail should have continued unless and until the court modified that standing order.

In this connection, we observe that neither the trial court nor the Commonwealth expressed any concern that Myers would remain at liberty following his conviction, while sentencing was deferred for the preparation of a pre-sentencing investigation. The trial record from the day the guilty verdict was returned on August 16, 2012, reveals that the parties' and the court's only concern was scheduling sentencing at a time that allowed for the preparation of that report. *See* Notes of Testimony, 8/16/2012, at 57–58. After the imposition of sentence, during a hearing that occurred nearly two months later, the parties focused solely on the question of how long to defer Myers' reporting date.

*See* Notes of Testimony, 10/4/2012, at 15–17. The court permitted Myers another two days of liberty so that he could order his affairs before reporting to commence his sentence two days later. These two periods of post-conviction liberty, one of approximately seven weeks, and another of two days, did not appear to engender concern on the parts of the court or the Commonwealth for the prospect that Myers would flee the jurisdiction or otherwise endanger the community.

Under the circumstances of this case, nothing in the applicable rules required Myers to reestablish a basis for his release pending appeal. Rather, as can be gleaned from the terms of Rule 521(C) (**"Whenever bail is refused or revoked** under this rule . . . .") and Rule 521(D)(1) (**"[T]he existing bail order may be modified** by a judge of the court of common pleas, upon the judge's own motion or upon motion of counsel for either party with notice to opposing counsel, in open court on the record when all parties are present."), viewed in light of Rule 534 and the commentary to Rules 521 and 534, only the revocation or modification of Myers' bond could have changed his bail status. In short, to continue his release under his unsecured bond, Myers should not have been required to take any action on post-trial motions or otherwise. The onus was on the court or the Commonwealth, to the extent they objected to the continuation of Myers' release, affirmatively to invoke an applicable provision of Rule 521 to modify or revoke that bond.

In this case, it appears that Myers and the Commonwealth, by focusing upon negotiating the terms of his reporting to serve his sentence, essentially presumed that his bond would be revoked. The trial court, in turn, did the same. We cannot find that this ameliorated the trial court's omission.

We recognize that Myers not only began to serve his sentence shortly after sentencing, but that he has served better than half of his sentence to date. Indeed, because Myers appears to have served more than his minimum sentence by now, he may not even be incarcerated as of this writing. However, because we cannot overlook the trial court's error, we must remand this case for a bail hearing, unless Myers has completed his term of confinement.

If such a hearing is necessary, we direct the trial court to determine whether a restoration of bail is warranted, under whatever terms are deemed appropriate by that court. Among the circumstances the court may consider is whether Myers intends to seek review of this Court's decision by petition to the Pennsylvania Supreme Court. Indeed, it would serve no purpose to release Myers on bail if he did not so intend. For precisely this reason, Rule 521(B)(3) directs a trial court that opts to release a defendant on bail pending appeal to require, as a term of his release, that the defendant, in fact, file the appeal or petition in question. Even if Myers intends to seek review, the trial court retains discretion to modify, revoke, or deny bail pursuant to the factors set forth in Rule 521(D), provided that the court adheres to the requirements for such proceedings set forth in that rule.[5] Because

---

**5.** We note that Myers presents a colorable argument that the trial court erred in denying bail solely on the apparent basis that Myers committed the crime and thereby demonstrated the propensity to commit similar crimes, compounded by the fact that he "taunted" a Pep Boys employee as he exited the parking lot. *See* T.C.O. at 3–4. In *Commonwealth v. Truesdale*, our Supreme Court held that "anticipated criminal activity alone cannot stand as a grounds for the denial of bail." 449 Pa. 325, 296 A.2d 829, 836 (1972). As well, the trial court did not state on the record its

we lack certain critical information to provide more case-specific guidance, we emphasize that the record is the trial court's to perfect, and that the bail decision lies in that court's discretion, based upon the evidence of record and the circumstances of the case.

Judgment of sentence affirmed. Case remanded with instructions. Jurisdiction relinquished.

reasoning for denying Myers' request for bail, as required by Pa.R.Crim.P. 521(C).