J-S55044-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: J.J., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| APPEAL OF: J.J., A MINOR | |
| | No. 2071 EDA 2015 |

Appeal from the Dispositional Order June 9, 2015
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s): CP-51-JV-0003239-2014

BEFORE: LAZARUS, J., DUBOW, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:          **FILED AUGUST 18, 2016**

J.J. (hereinafter "Juvenile") appeals from the dispositional order entered in the Court of Common Pleas of Philadelphia County on June 9, 2015, following his delinquency adjudication for Robbery, Conspiracy, Theft by Unlawful Taking, and Simple Assault.[1]  Following a review of the record, we affirm.

The juvenile court set forth the relevant procedural and factual history herein as follows:[2]

_____

[1] 18 Pa.C.S.A. §§ 3701(a)(1)(ii); 903(c); 3921(a); 2701(a), respectively. The Juvenile Court dismissed a charge for Possession of an Instrument of Crime, 18 Pa.C.S.A. § 907(a).
[2] The facts and procedural history are derived from the transcripts of Juvenile's adjudication hearing at which time Juvenile was tried together
*(Footnote Continued Next Page)*

*Former Justice specially assigned to the Superior Court.

**PROCEDURAL HISTORY**

Prior to their juvenile delinquency hearing co-defendants [Juvenile] and JG jointly filed a motion to suppress in court and out of court identification evidence alleging the process and identifications violated the co-defendants' due process rights. The motion was denied and an adjudication hearing was held wherein defendants were adjudicated delinquent of robbery as a felony of the second degree, conspiracy, theft, and simple assault. This appeal followed.

**STATEMENT OF FACTS**

At the suppression hearing and subsequent trial, the Commonwealth offered the testimony of the complainant and Philadelphia Police Officers Joseph Campbell, Colin Gershert [sic], and Jeffrey Thompson. The evidence established the following:

On December 10, 2014, at approximately 10:30 P.M. the complainant was walking in the area of the 6900 Block of Haines Street in Philadelphia, Pennsylvania. (N.T. 1/20/15 pgs. 62-63) As the complainant was walking, five young males approached him. Id. One of the males approached the complainant from the back, and placed his arm around the complainant's body. Id. Another male held an unknown object to the complainant's neck and said "give it up old head, give it up." (N.T. 1/20/15 pg. 63) The other three males went through the complainant's pants pockets. Id. The complainant testified that at this moment he thought he was going to get shot for nothing. (N.T. 1/20/15 pg. 66) After approximately three minutes, there was a loud noise in the area and the males scattered. (N.T. 1/20/15 pg. 63) The complainant was able to see that all of the males were young, black, and wearing dark hooded sweatshirts. (N.T. 1/20/15 pgs. 70-71) One male in the group stood out to the complainant because he was wearing a red hooded sweatshirt. (N.T. 1/20/15 pg. 70)

The complainant then went directly to his home and contacted the police. (N.T. 1/20/15 pgs. 63, 67, 10) Police Officers arrived at the complainant's home within five minutes.

*(Footnote Continued)* ───────────

with his codefendant, J.G.  J.G.'s case is on appeal separately with this Court at No. 1884 EDA 2015.

- 2 -

(N.T. 1/20/15 pgs. 8-9) There, the complainant told the Officers about the incident and described the males. (N.T. 1/20/15 pgs. 9, 84) Based on the description the complainant provided, the Officers sent out a flash description of the five assailants. (N.T. 1/20/15 pg. 9)

Officer Goshert and his partner Officer Thompson received the flash information while at a location just two blocks from the 6900 block of Haines Street. (N.T. 1/20/15 pgs. 27) At that location, Officer Goshert observed a group of three young black males matching the flash information, including the [Juvenile], who was wearing a red hood sweatshirt, the defendant JG who was wearing a dark hooded sweatshirt, and another young black male wearing a dark hooded sweatshirt. Id. As Officer Goshert and his partner, both in full uniform, approached the males, two fled on foot while [Juvenile] remained. (N.T. 1/20/15 pgs. 27-28) Officer Thompson pursued defendant JG and the other male, while Officer Goshert detained [Juvenile] so that the complaining witness could be transported to the location to make an identification. (N.T. 1/20/15 pg. 30) After a brief chase, defendant JG was apprehended and detained by Officer Thompson so that the complaining witness could be transported to make an identification. The complainant positively identified [Juvenile] as the same individual wearing the red hooded sweatshirt involved in the incident, and defendant JG as one of the other males wearing a dark hooded sweatshirt involved in the incident. Id. [The juveniles] were then handcuffed and placed under arrest. (N.T. 1/20/15 pgs. 33 -34)

Juvenile Court Opinion, filed 11/9/15, at 1-3.

On January 20, 2015, the juvenile court heard testimony on Juvenile's and his co-defendant's motion to suppress identification and an adjudication hearing immediately followed. At the conclusion of the hearing, the juvenile court held the matter under advisement. Ultimately, the juvenile court entered an order adjudicating Juvenile delinquent of one count each of the aforementioned charges on April 29, 2015. Juvenile did not file a post-dispositional motion.

On July 8, 2015, Juvenile filed a notice of appeal. On July 20, 2015, the juvenile court ordered Juvenile to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b) "no later than 21 days after entry of such order (on or before August 11, 2015)."[3] On August 11, 2015, Juvenile filed his Statement of Errors Complained of on Appeal along with his Request for an Extension of Time to File a Supplemental Statement of Errors Complained of on Appeal wherein he indicated that he had not yet received the notes of testimony from the adjudicatory hearing and that upon receiving the complete record in the matter, he may to raise additional challenges. These documents were filed together with a proof of service; however, the juvenile court never ruled on Juvenile's petition for extension of time.

Notwithstanding, on September 10, 2015, Juvenile filed his Supplemental Statement of Errors Complained of on Appeal. In his supplemental statement, Juvenile raised an additional claim of juvenile court error for permitting the complainant to read into evidence and testify regarding his statement to police. He also reiterated therein the two challenges to the juvenile court's denial of his suppression motion and his challenge to the sufficiency of the evidence that he had asserted in his initial concise statement. With regard to the latter, Juvenile expanded his

---

[3] As we will discuss more fully *infra*, a timely concise statement was due on or before August 10, 2015.

sufficiency challenge to include the crimes of Conspiracy, Theft and Simple Assault. The juvenile court filed an opinion pursuant to Pa.R.A.P. 1925(a) on November 9, 2015, wherein it considered the merits of the four issues Juvenile presented in his Supplemental Statement of Errors Complained of on Appeal.

In his brief, Juvenile presents the following Statement of the Questions Involved:

> 1. Was not the evidence insufficient as a matter of law to prove robbery, conspiracy, theft and simple assault beyond a reasonable doubt because [Juvenile's] involvement is based upon nothing more than a general similarity of clothing and the properly admitted circumstantial evidence amounted to little more than [Juvenile's] proximity to another male who was also identified based upon clothing exclusively?
>
> 2. Did not the [juvenile] court err in denying [Juvenile's] motion to suppress the out-of-court identification because the show up was unnecessarily suggestive and not otherwise reliable in violation of the Due Process Clauses of the Pennsylvania and Federal Constitutions?
>
> 3. Did not the [juvenile] court err in admitting the complainant's statement to the police over objection where the complainant had neither been impeached nor did he testify to a lack of recollection?

Brief for Juvenile at 4.[4]

_____

[4] In a footnote, Juvenile explained that upon further consideration he had chosen to abandon his second suppression challenge because officers had reasonable suspicion to detain him for investigation. Brief for Juvenile at 4. n. 1.

*(Footnote Continued Next Page)*

At the outset, we note that while counsel for Juvenile, apparently relying upon the erroneous instruction of the juvenile court, indicated that he had until August 11, 2015, to file his Pa.R.A.P. 1925(b) statement, **see** Supplemental Statement of Errors Complained of on Appeal, filed 9/10/15, at ¶2, twenty-one days from July 21, 2015, was Monday, August 10, 2015. Furthermore, although Juvenile presented a challenge to the sufficiency of the evidence and the juvenile court's denial of his suppression motion in his Statement of Errors Complained of on Appeal, Juvenile did not raise therein the third question he presents for our review. Moreover, the sufficiency challenge Juvenile initially asserted pertained only to the robbery adjudication, while he lists conspiracy, theft and simple assault in his supplemental statement. As such, we must consider whether Juvenile's initial concise statement and the first and third issues he presents for this Court's review, which he first raised in his Supplemental Statement of Errors Complained of on Appeal, were properly preserved for our review.

We begin by noting it is well-settled in Pennsylvania that the failure to file a timely Rule 1925(b) statement automatically results in waiver of all issues on appeal, regardless of the length of the delay in filing. **See Commonwealth v. Hill**, 609 Pa. 410, 427, 16 A.3d 484, 494 (2011). We further acknowledge that Rule 1925(b) provides that appellants may seek an

_(Footnote Continued)_ ——————————

extension of time in which to file a Rule 1925(b) statement beyond the initial timeframe ordered by the trial court.[5] However, this Court has concluded that a late 1925(b) statement by a criminal defendant represented by counsel constitutes *per se* ineffectiveness, and the proper remedy is to remand for the filing of such a statement *nunc pro tunc.* **Commonwealth v. Grohowski**, 980 A.2d 113, 114 (Pa.Super. 2009), citing **Commonwealth v. Burton**, 972 A.2d 428, 433 (Pa.Super. 2009) (*en banc*); **see also Commonwealth v. Myers**, 86 A.3d 286, 289 (Pa.Super. 2014) (observing that if appellant's Rule 1925(b) statement were late, "we would be obligated as a matter of our rules of procedure to deem appellate counsel ineffective[]

---

[5] **Rule 1925. Opinion in Support of Order**

...

**(b) Direction to file statement of errors complained of on appeal; instructions to the appellant and the trial court.**

...

(2) *Time for filing and service.* The judge shall allow the appellant at least 21 days from the date of the order's entry on the docket for the filing and service of the Statement. **Upon application of the appellant and for good cause shown, the judge may enlarge the time period initially specified or permit an amended or supplemental Statement to be filed. Good cause includes, but it is not limited to, delay in the production of a transcript necessary to develop the Statement so long as such delay is not attributable to a lack of diligence in ordering or paying for such transcript by the party or counsel on appeal**. In extraordinary circumstances, the judge may allow for the filing of a Statement of amended or supplemental Statement *nunc pro tunc.*

Pa.R.A.P.1925(b)(2) (emphasis added).

and to remand for the filing of a Statement *nunc pro tunc.*") citing Pa.R.A.P.1925(c)(3).

Clearly, contrary to counsel's apparently good-faith belief the initial concise statement had been timely filed in light of the juvenile court's erroneous directive, Juvenile's Statement of Errors Complained of on Appeal was untimely; however, he followed the proper procedure for seeking an extension of time in which to file a supplemental concise statement along with a proposed order. He also presented a good reason for requesting an extension of time. In addition, Juvenile promptly filed his supplemental statement approximately thirty days after the initial filing, and the juvenile court considered the issues he raised therein. Inexplicably, the juvenile court never entered an order granting or denying Juvenile's petition, yet it did issue a Rule 1925(a) opinion wherein it considered the four issues Juvenile presented in his supplemental statement without a discussion of Juvenile's possible waiver of those claims in light of the aforementioned procedural anomalies. As such, we find Juvenile properly preserved his claims for our review, and we will proceed to a consideration of the merits thereof. ***See Commonwealth v. Burton***, 973 A.2d 428, 433 (Pa.Super. 2009) (stating that even where a concise statement is untimely filed, this Court may decide the appeal on the merits if the trial court had adequate opportunity to prepare an opinion addressing the issues being raised on appeal).

Juvenile first challenges the sufficiency of the evidence to sustain his delinquency adjudication. When examining a challenge to the sufficiency of the evidence supporting an adjudication of delinquency, this Court employs a well-settled standard of review:

> When a juvenile is charged with an act that would constitute a crime if committed by an adult, the Commonwealth must establish the elements of the crime by proof beyond a reasonable doubt. When considering a challenge to the sufficiency of the evidence following an adjudication of delinquency, we must review the entire record and view the evidence in the light most favorable to the Commonwealth.
> In determining whether the Commonwealth presented sufficient evidence to meet its burden of proof, the test to be applied is whether, viewing the evidence in the light most favorable to the Commonwealth and drawing all reasonable inferences therefrom, there is sufficient evidence to find every element of the crime charged. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by wholly circumstantial evidence.
> The facts and circumstances established by the Commonwealth need not be absolutely incompatible with a defendant's innocence. Questions of doubt are for the hearing judge, unless the evidence is so weak that, as a matter of law, no probability of fact can be drawn from the combined circumstances established by the Commonwealth.

*In re V.C.*, 66 A.3d 341, 348–349 (Pa.Super. 2013) (quoting *In re A.V.*, 48 A.3d 1251, 1252–1253 (Pa.Super. 2012)). The finder of fact is free to believe some, all, or none of the evidence presented. *Commonwealth v. Gainer*, 7 A.3d 291, 292 (Pa.Super. 2010).

The Pennsylvania Crimes Code defines Robbery, in relevant part, as follows:

**(a) Offense defined.**
    (1) A person is guilty of robbery if, in the course of committing a theft, he:

* * *

>> (iv) inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury;
>> (v) physically takes or removes property from the person of another by force however slight;

18 Pa.C.S.A. § 3701(a)(1). "Bodily injury" means an "impairment of physical condition or substantial pain." *Id.* § 2301.

The Crimes Code also defines Theft by Unlawful Taking or Disposition as follows:

> **(a) Movable property.**—A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof.

18 Pa.C.S.A. § 3921(a).

One is guilty of conspiracy to commit a crime with another person or persons if with the intent of promoting or facilitating its commission he:

> (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
>
> (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S.A. § 903(a). This requires proof that: 1) the defendant entered into an agreement with another to commit or aid in the commission of a crime; 2) he shared the criminal intent with that other person; and 3) an overt act was committed in furtherance of the conspiracy. *Commonwealth v. Devine*, 26 A.3d 1139, 1147 (Pa.Super. 2011). "This overt act need not

- 10 -

be committed by the defendant; it need only be committed by a co-conspirator." ***Commonwealth v. Murphy****,* 795 A.2d 1025, 1038 (Pa.Super. 2002) (citation omitted).

Finally, the Crimes Code provides the following definition for Simple Assault:

> **(a) Offense defined.**—Except as provided under section 2702 (relating to aggravated assault), a person is guilty of assault if he:
>    (1) attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another[.]

18 Pa.C.S.A. § 2701(a)(1).

A review of Juvenile's argument pertaining to his sufficiency of the evidence claim, wherein he casts the evidence in a light most favorable to himself, reveals that he has failed to list, let alone discuss, the aforementioned elements of robbery, conspiracy, theft by unlawful taking or simple assault or explain why the evidence did not establish each of those elements beyond a reasonable doubt. Indeed,

> [i]nstead of proffering a proper sufficiency claim, Appellant instead makes assertions that correspond with an attack raising weight of the evidence claims. ***See Commonwealth v. Dougherty****,* 580 Pa. 183, 860 A.2d 31, 36 (2004) (holding sufficiency claim that "there is no credible evidence" is not sufficiency claim at all; it is a weight claim); ***Commonwealth v. Small****,* 559 Pa. 423, 741 A.2d 666, 672 (1999) (stating appellate court will not review sufficiency claim where argument in support of claim goes to weight, not sufficiency, of the evidence); ***Commonwealth v. Mack,*** 850 A.2d 690, 693 (Pa.Super. 2004) (providing no relief where appellant alleged sufficiency but argued weight; weight issue was reserved for fact-finder below).

***Commonwealth v. Sherwood***, 603 Pa. 92, 106-07, 982 A.2d 483, 492

(2009). Juvenile's attack on weight rather than sufficiency is clear from

statements like the following contained in his brief:

> The record simply does not support the trial court's conclusion that [the complainant] made an identification of anything more than a pair of hoodies and some pants. The [juvenile] court's conclusion rests on nothing more than a guess.

Brief for Juvenile at 25.

Although the failure to provide this Court with appropriate argument

and citation to applicable legal authority usually results in waiver, ***see***

***Sherwood***, 603 Pa. at 107, 982 A.2d at 492; ***Commonwealth v. Spotz***,

552 Pa. 499, 716 A.2d 580, 585 n. 5 (1998), to the extent Juvenile develops

an argument pertaining to the sufficiency of the identification evidence, no

relief is due.

Juvenile's argument centers around the fact that the complainant was

confused in his identification of Juvenile and J.G. at the hearing and

admitted he identified them to police based upon their clothing. Juvenile

stresses the complainant's confusion was evident at the hearing, at which

time neither Juvenile nor J.G. was wearing a hoodie, and maintains that the

complainant, in fact, never identified him as an assailant. Brief for Juvenile

at 13-14, 19-20. Juvenile posits "[h]e was adjudicated because when [the

complainant] saw a young man in a red hoodie, he mistakenly believed it

was the same hoodie worn by the person who robbed him fifteen minutes

earlier." ***Id***. at 20. Juvenile spends the bulk of argument on this issue relaying statistics regarding mistaken identifications and discussing caselaw from this and other jurisdictions in this regard as well as caselaw wherein the evidence failed to establish probable cause to arrest. ***Id***. at 20-32. For instance, he notes that red and black hoodies are "common apparel in the United States" and faults the complainant for failing to mention zippers, logos, fabric and pocket type or color shade. He posits this is particularly relevant in a populated area such as Philadelphia, where dozens of people in the area may have matched the complainant's description. ***Id***. at 23-24.

Rather than challenge the sufficiency of the evidence to support any of the applicable elements of any offense, Juvenile contends the evidence was insufficient to prove that he was one of the individuals who robbed the complainant. As such, we need not conduct a thorough review of the evidence to determine whether it can support a finding that all of the elements of the offenses has been met. Rather, we will focus on the specific sufficiency issue raised by Appellant: whether the evidence was sufficient to establish that the complainant properly identified juvenile. When viewed in a light most favorable to the Commonwealth at the adjudication hearing, we find it was.

In ***Commonwealth v. Orr***, 38 A.3d 868, 874–75 (Pa.Super. 2011) this Court stating that despite a victim's inability to make an in-court identification of a defendant, a review of entire record including

circumstantial evidence, the victim's description of common items of clothing and of general physical characteristics, along with the victim's unequivocal out-of-court-identification to police provided shortly after the crime, may be considered to establish the identity of that defendant. This Court stressed that the victim at no time stated he had misidentified the appellant shortly after the incident, but simply indicated he had been unable to view clearly the face of one of the perpetrators during the robbery. We further noted that the trial court, as the finder of fact, had heard the testimony of all witnesses, was free to make credibility determinations and determined the evidence had been sufficient to sustain the convictions and that this Court's function was not to reevaluate or disturb those credibility determinations. *Id*. at 879 n. 5.

Herein, the complainant testified at the adjudication hearing that he observed the complexion and clothing of the juveniles during the several minutes the incident ensued and indicated that he did so clearly, for he does not wear glasses and was not intoxicated at the time. N.T., 1/20/15, at 71. Complainant also stated he saw the face of the individual wearing the red jacket and that the person holding the instrument to his neck was a light-skinned African American. *Id*. at 70, 76. Complainant unequivocally identified Juvenile to police whom officers observed wearing a red hooded sweatshirt less than two blocks from the scene within minutes of the

incident. *Id*. We find that such evidence was sufficient to establish that Appellant was the individual who committed the aforesaid crimes.

Next, Juvenile avers the juvenile court erred in denying his motion to suppress the complainant's out-of-court identification of Juvenile because the procedure utilized to obtain it was unnecessary and unduly suggestive. Brief for Appellant at 35. In support of this assertion, Juvenile contends at the time he was identified he was handcuffed, surrounded by police, and transported to the same block where J.G. had been apprehended. He further posits he was in the presence of an excessive number of officers and police cruisers during which time suggestive discussion could be heard over police radio. Brief for Juvenile at 38-39.

Juvenile also states that, "most importantly" the complainant's identification was "patently unreliable." *Id*. at 34, 40. Juvenile reiterates that the Commonwealth presented evidence only that the complainant was robbed by five African American youth whom he vaguely described based upon their clothing. Juvenile urges that absent more detailed and reliable evidence pertaining to the complainant's opportunity to observe the individuals, his identification was unreliable and should have been suppressed. *Id*. at 40-42.

> In reviewing the propriety of identification evidence, the central inquiry is whether, under the totality of the circumstances, the identification was reliable. The purpose of a "one on one" identification is to enhance reliability by reducing the time elapsed after the commission of the crime. Suggestiveness in the identification process is but one factor to be considered in

determining the admissibility of such evidence and will not warrant exclusion absent other factors.

As this Court has explained, the following factors are to be considered in determining the propriety of admitting identification evidence: the opportunity of the witness' [sic] to view the perpetrator at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the perpetrator, the level of certainty demonstrated at the confrontation, and the time between the crime and confrontation. The corrupting effect of the suggestive identification, if any, must be weighed against these factors. Absent some special element of unfairness, a prompt "one on one" identification is not so suggestive as to give rise to an irreparable likelihood of misidentification.

*Commonwealth v. Brown*, 23 A.3d 544, 558 (Pa.Super. 2011) (*en banc*) (internal citations and quotation marks omitted).  This Court has found that "on-scene, one-on-one identifications, even where an appellant is handcuffed and officers ask a victim to identify him as the perpetrator, are not so suggestive as to give rise to an irreparable likelihood of misidentification." *Commonwealth v. Armstrong*, 74 A.3d 228, 239 (Pa.Super. 2013) (citation and internal quotation marks omitted), appeal granted on other grounds, 623 Pa. 560, 83 A.3d 411 (Jan. 8, 2014).

Herein, as we stated *supra*, the complainant testified he was able to identify the young males by their clothing and their complexion.  He also informed the juvenile court he saw the face of the individual wearing the red jacket and holding the instrument to his neck demanding "Give it up, old head, give it up."  N.T., 1/20/15, at 70.  He explained he does not wear glasses and was not intoxicated at the time of his identification which

occurred within several minutes of the incident. *Id*. at 71. While Officer Campbell testified Juvenile had been handcuffed after the initial stop, *Id*. at 15, Officer Goshert testified Juvenile was handcuffed after the identification, and the trial court found Juvenile was not handcuffed when the complainant identified him. *Id*. at 30, 33-34, 59-60. In this regard, the trial court correctly reasoned as follows:

> [T]he totality of the circumstances surrounding the victim's identifications, particularly the promptness with which they were completed, indicated to this court that the out of court identifications were completely reliable. There was no evidence presented that indicated the presence of special elements of unfairness that would have given rise to an irreparable likelihood of misidentification by the witness. While one on one confrontations between the suspect and victim are highly suggestive, an on the scene identification made shortly after the occurrence of the crime does not, by itself, offend a suspect's due process rights. Commonwealth v. Moye, 836 A.2d 973 (Pa.Super. 2003). Officer Goshert testified that the complainant identified [Juvenile] without hesitation as the perpetrator in the red hooded sweatshirt, and defendant JG as one of the perpetrators in a dark hooded sweatshirt within minutes of the incident. (N.T. 1/20/1015 [sic] pg. 30). Additionally, no corrupting effect was shown to have resulted from the on the scene identification. Finding no special elements of unfairness, coupled with the close proximity in time and place to the actual offense, the identification procedure so enhances the reliability of the on the scene identification as to outweigh any possibility of irreparable misidentification that might arise from the witness' observance of the suspect in police custody. See, Commownealth v. Allen, 429 A.2d 1113 (Pa.Super. 1981).

Juvenile Court Opinion, filed 11/9/15 at 4-5. Upon our review of the record, we find the record supports the juvenile court's factual findings and the legal conclusions drawn therefrom.

Indeed, the linchpin in assessing the admissibility of an identification is reliability. ***McElrath v. Commonwealth***, 592 A.2d 740, 743 (Pa.Super. 1991) (citations omitted). Despite Juvenile's claim, the reliability of the complainant's identification of Juvenile within two blocks of the scene of the incident is not outweighed by undue suggestion based upon police presence at the time of the identification or by the fact that he was transported a short distance to the other end of the block where his codefendant was being detained. ***See Commonwealth v. Moye***, 836 A.2d 973, 977–978 (Pa.Super. 2003), *appeal denied,* 851 A.2d 142 (Pa. 2004) (holding that reliability of victim's identification of defendant made after victim observed defendant and unhesitatingly identified him in very close temporal proximity to the commission of the crime was not outweighed by police remarks made to victim about defendant prior to the identification and when victim identified defendant while defendant sat in a police van).

Nor is the complainant's identification outweighed by Juvenile's speculation that the complainant may have heard transmissions over police radio, for the record is devoid of any evidence that he, in fact, did so. Also, contrary to Juvenile's assertions, the complainant's unequivocal identification of Juvenile on December 10, 2014, is not negated by his later confusion at the adjudication hearing about which juvenile seated in the hearing room had been wearing the red hoodie that evening. Consequently, we find no

special element of unfairness exists so as to give rise to an irreparable likelihood of misidentification.

Finally, Juvenile avers the juvenile court improperly admitted the complainant's police statement into evidence at the adjudicatory hearing as an exception to Pa.R.E. 803.1.[6] Juvenile maintains that because the complainant did not testify he could not remember the incident or that he was confused about the relevant details thereof, and to the contrary answered each question clearly and concisely, his memory did not need to be refreshed. Brief for Juvenile at 43.[7] Moreover, Juvenile claims the "impermissible introduction of the statement attempts to bolster an

_____

[6] This relevant portion of this Rule provides:

> (3) Recorded Recollection of Declarant-Witness. A memorandum or record made or adopted by a declarant-witness that:
>
> (A)  is on a matter the declarant-witness once knew about but now cannot recall well enough to testify fully and accurately;
> (B)  was made or adopted by the declarant-witness when the matter was fresh in his or her memory; and
> (C)  the declarant-witness testifies accurately reflects his or her knowledge at the time when made.
>
> If admitted, the memorandum or record may be read into evidence and received as an exhibit, but may be shown to the jury only in exceptional circumstances or when offered by an adverse party.

Pa.R.E. 803.1(3).

[7] Juvenile placed a timely objection on the record to complainant's reading of the statement. N.T., 1/20/15, at 72, 74-75.

otherwise completely insufficient identification" because it suggests the complainant observed specific characteristics of Juvenile such as his age and height which had not been included in the initial description the complainant had provided to police. *Id*. at 44.

In response to this argument, the juvenile court indicated that during the hearing,

> the complainant appeared to lack sufficient present recollection to enable him to testify fully and accurately. After the complainant misidentified the clothing worn by each of the assailants, the Commonwealth presented the witness with his statement made to police in an attempt to refresh the witness['] recollection. The witness could not testify fully from present memory. . . The prior statement of the complainant to police had the indicia of trustworthiness required by the rules and was never categorically disowned by the complainant. Moreover, [Juvenile's] counsel cross-examined the witness concerning his lack or present recollection.

Juvenile Court Opinion, 11/9/15, at 6-7.

Juvenile's assertions at this juncture in his brief contradict those he made earlier in support of his sufficiency of the evidence challenge at which time he posited the complainant had never been able to identify him and that the complainant was confused in his identification of Juvenile and J.G. at the adjudication hearing. Indeed, when objecting to the Commonwealth's attempt to show the complainant his statement to police, counsel for Juvenile admitted "[t]he witness hasn't testified that he can recall anything---and---so I don't see the basis of showing him something prepared by another individual." *Id*. at 74. After the juvenile court overruled the

objection, the complainant read his statement wherein he had indicated the individual who had placed something to his neck and whose face he observed had been wearing a red jacket. *Id*. at 75-76. This statement was in line with Officer Goshert's earlier testimony that Juvenile had been wearing a red hooded sweatshirt and was stopped in the immediate area of the robbery where the complainant identified him. *Id*. at 35. In light of the foregoing, we find no error in the juvenile court's allowing him to read his statement to police into the record.[8]

Dispositional Order Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/18/2016

---

[8] As the trial court notes, any error in this regard would have been harmless, as the complainant's statement was merely cumulative of the substantially similar, properly admitted testimony of officers regarding the complainant's contemporaneous identifications of Juvenile and J.G. as two of the co-conspirators. Trial Court Opinion, filed 11/9/15, at 7. Moreover, where, as herein, the juvenile court acted as the finder of fact, it is presumed to know the law and disregard inadmissible evidence. *Commonwealth v. Smith*, 97 A.3d 782, 788 (Pa.Super. 2014).