J-S72043-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DANIR MALLOY | : | |
| | : | No. 3569 EDA 2016 |
| Appellant | | |

Appeal from the Judgment of Sentence October 20, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0012074-2015

BEFORE:   BENDER, P.J.E., MUSMANNO, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:          **FILED NOVEMBER 14, 2017**

Appellant Danir Malloy appeals from the Judgment of Sentence entered in the Court of Common Pleas of Philadelphia County on October 20, 2016, at which time he was sentenced to an aggregate term of eleven (11) years to twenty-two (22) years in prison.  We affirm.

The trial court set forth the relevant facts and procedural history herein as follows:

> **PROCEDURAL BACKGROUND**
>
> On August 11, 2016, following trial, a jury found Appellant guilty of robbery (18 Pa. C.S. § 3701(a)(1)(ii)), theft by unlawful taking (18 Pa. C.S. § 3921(a)), possessing an instrument of a crime (PIC) (18 Pa. C.S. § 907(a)), and terroristic threats (18 Pa. C.S. § 2706(a)(1)). On October 14, 2016, this [c]ourt sentenced Appellant to an aggregate term of eleven (11) to twenty-two (22) years' incarceration, which included a mandatory minimum of ten (10) years' incarceration under 42 Pa. C.S. § 9714 for his robbery conviction.

---

\*   Former Justice specially assigned to the Superior Court.

On October 19, 2016, Appellant filed a motion for reconsideration of sentence, claiming this [c]ourt had erroneously applied 42 Pa. C.S. § 9714. On October 20, 2016, following a hearing on Appellant's motion, this [c]ourt again sentenced Appellant to 11 to 22 years' incarceration. Although this [c]ourt did not sentence Appellant pursuant to § 9714, this [c]ourt imposed consecutive sentences of (10) to twenty (20) years' incarceration on the robbery conviction and one (1) to two (2) years' incarceration on the PIC conviction. This [c]ourt imposed no sentence on the terroristic threats conviction, and the theft charge, for purposes of sentencing, merged with the robbery charge.

On November 9, 2016, Appellant filed another motion for reconsideration of sentence, which this [c]ourt denied on November 14, 2016. On November 18, 2016, Appellant filed a notice of appeal to the Superior Court, and on February 14, 2016, Appellant filed a "Statement of Errors Complained of on Appeal" pursuant to Pa. R.A.P. 1925(b).

**FACTUAL BACKGROUND**

At trial, the Commonwealth presented the testimony of Louis Lanni ("Mr. Lanni"), Philadelphia Police Officer George Dilworth ("Officer Dilworth"), Philadelphia Police Officer Walter Henik ("Officer Henik"), and Tiara Bethea ("Ms. Bethea").

Mr. Lanni testified that on November 11, 2015, around 1:00 a.m., he left a bar and was walking home along the 1100 block of Spruce Street in the city and county of Philadelphia, Pennsylvania, when he felt a "violent shove on [his] rear and right side causing [him] to stumble forward."[1] Mr. Lanni turned around and encountered Appellant "standing directly behind [him] holding a silver automatic handgun ... point[ed] at [Mr. Lanni's] chest." Appellant demanded money and threatened: "Give it up or you're going to get hurt." Mr. Lanni, however, grabbed Appellant's handgun and the two men "struggled … for control of the gun." (N.T., 8/10/16, pgs. 130-132, 145).

At some point Mr. Lanni lost his footing and fell to the sidewalk, landing hard on his right hip where he recently underwent a hip replacement surgery. Appellant landed on top of Mr. Lanni but he quickly rose to his feet. With Appellant now standing over him, pointing a gun, Mr. Lanni said "You win" and advised that his money was in his left pocket. Appellant reached into Mr. Lanni's pocket and confiscated fifteen dollars ($15), which was all the money Mr. Lanni possessed. As Appellant

- 2 -

walked away, Mr. Lanni called 911 with his cellular phone and informed the dispatcher of Appellant's description. (N.T., 8/10/16, pgs. 132-134, 145-148).

Police officers arrived "rather quickly" and requested Mr. Lanni to enter their patrol car so they could search for Appellant. Minutes later, another officer advised over police radio that he stopped someone a few blocks away who matched Appellant's description. Mr. Lanni was transported to the location, and he promptly identified Appellant as the person that robbed him. Mr. Lanni also identified the "handgun" that Appellant used in the robbery. Although the gun turned out to be a toy, Mr. Lanni testified that he believed at the time of the robbery - *i.e.*, when Appellant pointed the object at Mr. Lanni's chest and demanded his money - that the gun was genuine. (N.T., 8/10/16, pgs. 134-136, 160-162).

Officer Dilworth testified that on November 11, 2015, he and his partner were on patrol when they received a radio call around 1:00 a.m. regarding "a robbery in progress" near the 1100 block of Spruce Street. The officers responded and were "flagged down by [Mr. Lanni] who stated that he had just been robbed by point of handgun." A few minutes later the officers received a radio call from another officer, who patrolling only a few blocks away, stopped someone matching Appellant's description. The officers transported Mr. Lanni to the location, and upon viewing Appellant, Mr. Lanni "said one hundred percent, that's the guy that robbed me." Police officers subsequently arrested Appellant. (N.T., 8/10/16, pgs. 40-49).[2]

Officer Dilworth further testified that Tiara Bethea (Ms. Bethea) was present with Appellant at the arrest location and was holding "a canvas bag under her shoulder, holding it tight to herself." Officer Dilworth noticed the bag because Ms. Bethea "reach[ed] in it a few times[.]" While viewing the bag's exterior surface, Officer Dilworth observed the "outline" of an object that resembled a weapon. Officer Dilworth requested permission to search the bag but Ms. Bethea said "no" and "tried to walk away and leave the scene." Because Mr. Lanni reported a gunpoint robbery and Ms. Bethea "kept reaching in [a] bag" that contained an object shaped like a gun, Officer Dilworth confiscated the bag "for everybody's safety on the scene." Officer Dilworth thereafter discovered a "silver handgun" inside the bag, which Mr. Lanni identified as the gun used in the robbery. (N.T., 8/10/16, pgs. 53-54).[3]

Ms. Bethea testified that she and Appellant lived in New Jersey and came to Philadelphia by train to patronize some bars

located on South Street. After having a few drinks on South Street, Ms. Bethea and Appellant decided to return to New Jersey by the "Speedline" train. As they walked to the train station, Appellant left Ms. Bethea to purportedly go to the bathroom. Ms. Bethea, meanwhile, continued walking to the train station. About eight (8) minutes later, Appellant caught up with Ms. Bethea and asked to see her bag/purse so he could retrieve a cigarette. Upon returning the bag, Appellant continued walking with Ms. Bethea until they were stopped by police. Ms. Bethea testified that her bag contained no gun when she left home that evening to come to Philadelphia, or when she gave it to Appellant when he requested a cigarette. (N.T., 8/10/16, pgs. 186-195, 223).

At the conclusion of trial, the jury found Appellant guilty of robbery, theft by unlawful taking, PIC, and terroristic threats. On October 14, 2016, this [c]ourt sentenced Appellant on the robbery conviction to ten (10) to twenty (20) years' incarceration under 42 Pa. C.S. § 9714(a)(1), which requires a mandatory term of ten (10) years' incarceration for a second conviction of a "crime of violence."[4] This Court ruled that Appellant's prior conviction of arson in the State of New Jersey constituted a first conviction of a "crime of violence" under 42 Pa. C.S. § 9714(g),[5] On the PIC conviction, this [c]ourt sentenced Appellant to a consecutive term of one (1) to two (2) years' incarceration. This [c]ourt imposed no sentence on the terroristic threats conviction, and the theft charge, for purposes of sentencing, merged with the robbery charge. Overall, Appellant's aggregate sentence was 11 to 22 years' incarceration. (N.T., 10/14/16).

On or around October 19, 2016, Appellant filed a motion for reconsideration of sentence, claiming this [c]ourt had erroneously imposed a mandatory sentence under § 9714(a)(1) for his robbery conviction. On October 20, 2016, following a hearing on Appellant's motion, this [c]ourt ruled that Appellant's prior arson conviction was not a "first strike" under § 9714, and that his robbery conviction did not constitute a "second strike" requiring a mandatory minimum sentence. (N.T. 10/20/16, pgs. 1-14). Nonetheless, without applying § 9714, this [c]ourt still determined that 11 to 22 years' incarceration was an appropriate sentence, and therefore imposed consecutive terms of 10 to 20 years' incarceration for Appellant'[s] robbery conviction and 1 to 2 years' incarceration for his PIC conviction. (Id., pgs. 26-27).

_____

[1]Mr. Lanni testified that he consumed two drinks of alcohol at the bar. (N.T., 8/10/16, pg. 137).

[2] Officer Walter Henik was the officer that stopped Appellant. He testified that he likewise was patrolling the area and received a radio call describing "a black male in his early 20s with a black waist length jacket, gray pants, black and white baseball cap and a beard that committed the robbery." A few blocks from the robbery location, Officer Henik observed Appellant, who matched the "exact description" of the suspect. Officer Henik therefore pulled over and told Appellant to put his hands on the patrol car. After frisking Appellant and radioing that he stopped someone matching the suspect's description, Officer Henik waited with Appellant until Officer Dilworth and Mr. Lanni arrived about one minute later. Once Mr. Lanni identified Appellant, Officer Henik searched him and recovered $20, consisting of a $10 bill, a $5 bill, and five $1 bills. No firearm was recovered from Appellant. (N.T., 8/10/16, pgs. 85-96).

[3] Although the gun was not real, Officer Dilworth testified that the object resembled "a semiautomatic handgun.' (N.T., 8/10/16, pgs. 58, 77, 80).

[4] § 9714(a)(1) provides, in relevant part:

(a) Mandatory sentence. ... (1) Any person who is convicted in any court of this Commonwealth of a crime of violence shall, if at the time of the commission of the current offense the person had previously been convicted of a crime of violence, be sentenced to a minimum sentence of at least ten years of total confinement, notwithstanding any other provision of this title or other statute to the contrary.... See 42 Pa. C.S. § 9714(a)(1).

[5] § 9714(g) provides, in relevant part:

(g) Definition. - As used in this section, the term 'crime of violence' means ... arson engendering [sic] persons or aggravated arson as defined in 18 Pa, C.S. § 3301(a) or (a.1) ... or an equivalent crime under the laws of this Commonwealth in effect at the time of the commission of that offense or an equivalent crime in another jurisdiction. See 42 Pa. C.S. § 9714(g).

Trial Court Opinion, filed 3/15/17, at 1-6.

On November 9, 2016, Appellant filed his "Reconsideration of Sentence Nunc Pro Tunc."  In its Order entered on November 15, 2016, the trial court ordered that Appellant's petition to reconsider his sentence was accepted as timely filed and further denied the petition.  Appellant filed a timely notice of appeal on November 18, 2016.

On January 17, 2017, the trial court ordered Appellant to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b).  On February 14, 2017, Appellant filed his "Nunc Pro Tunc Statement of Errors Complained of on Appeal," and the next day the trial court entered an Order indicating that the Statement was accepted as timely filed.  Therein, Appellant stated he wished to raise the following, sole issue on appeal:

> This [c]ourt erred as a matter of law and abused its discretion in imposing an excessive sentence, inasmuch as the [c]ourt failed to adequately examine and investigate [Appellant's] background, character and rehabilitative needs pursuant to 42 Pa.C.S. § 9721.  The [c]ourt also erred in double counting factors to justify the excessive sentence, that have already been taken into consideration in the sentencing guidelines.

**See** Nunc Pro Tunc Statement of Errors Complained of on Appeal, filed 2/14/17, at ¶ 4(A).[1]

_____

[1] We remind Appellant the proper manner in which to obtain an extension of time to file a concise statement is by filing a written application with the trial court seeking such relief for good cause shown, not the filing of the document with a "*nunc pro tunc*" designation as was done herein.  Pa.R.A.P. 1925(b)(2). It is well-settled that the failure to file a timely Rule 1925(b) statement automatically results in waiver of all issues on appeal, regardless of the length

In his brief, Appellant presents the following Statement of the Question Involved:

Did not the lower court err and abuse its discretion by sentencing [Appellant] to an unreasonable sentence that was higher than the standard range of the Sentencing Guidelines, without giving adequate reasons, on the basis of considerations, including the nature of the offense and his prior criminal history, that were already factored into the Sentencing Guidelines and did not the lower court further err in failing to give proper consideration to [Appellant's] personal circumstances and mitigating factors?

Brief for Appellant at 3.

Although Appellant presents a single question for this Court's review in his appellate brief, that question is multifaceted. Initially, Appellant asserts the trial court erred in failing to provide adequate reasons for its sentence. However, Appellant did not present this specific challenge in his concise statement of matters complained of on appeal.

It is well-settled that a claim not raised in the lower court is waived and cannot be raised for the first time on appeal. Pa.R.A.P. 302(a); **see also**

---

of the delay in filing. **See Commonwealth v. Hill**, 16 A.3d 484, 494 (Pa.2011). However, this Court has concluded that a late 1925(b) statement by a criminal defendant represented by counsel constitutes *per se* ineffectiveness, and the proper remedy is to remand for the filing of such a statement *nunc pro tunc*. **Commonwealth v. Grohowski**, 980 A.2d 113, 114 (Pa.Super. 2009), *citing* **Commonwealth v. Burton**, 972 A.2d 428, 433 (Pa.Super.2009) (*en banc* ); **see also Commonwealth v. Myers**, 86 A.3d 286, 289 (Pa.Super. 2014) (observing that if an appellant's Rule 1925(b) statement were late, "we would be obligated as a matter of our rules of procedure to deem appellate counsel ineffective and to remand for the filing of a Statement *nunc pro tunc.*"), *citing* Pa.R.A.P.1925(c)(3).

*Commonwealth v. Lopata*, 754 A.2d 685, 689 (Pa.Super. 2000). In addition, "[a] theory of error different from that presented to the trial jurist is waived on appeal, even if both theories support the same basic allegation of error which gives rise to the claim for relief." *Commonwealth v. Ryan*, 909 A.2d 839, 845 (Pa.Super. 2006). Because only claims properly presented before the trial court are preserved for appeal, Appellant's contention the trial court did not state adequate reasons on the record to support its sentence is waived.

Appellant further maintains the trial court failed to consider his personal circumstances and mitigating factors prior to imposing his sentence which falls outside of the Sentencing Guidelines' standard range and in "double counting" factors accounted for in the Guidelines. These properly preserved claims present challenges to the discretionary aspects of Appellant's sentence. When reviewing a discretionary aspects of sentencing claim, this Court is guided by the following principles:

> [T]he proper standard of review when considering whether to affirm the sentencing court's determination is an abuse of discretion.... [A]n abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.... An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.... The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon

an evaluation of the individual circumstances before it. **Commonwealth v. Walls**, 592 Pa. 557, 926 A.2d 957, 961 (2007) (internal citations omitted).

**Commonwealth v. Allen**, 24 A.3d 1058, 1064 (Pa.Super. 2011).

However, it is well-settled that challenges to the discretionary aspects of one's sentence are not reviewable as a matter of right. **Id**. Before this Court can address such a discretionary challenge, an appellant must satisfy the following four-part test:

> (1) whether appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, see Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

**Id**. (citation omitted).

What constitutes a substantial question must be evaluated on a case-by-case basis. **Commonwealth v. Paul**, 925 A.2d 825, 828 (Pa.Super. 2007). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." **Commonwealth v. Swope**, 123 A.3d 333, 338 (Pa.Super. 2015) (citation omitted). Therefore, an appellant's Rule 2119(f) statement must sufficiently articulate the manner in which the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular

fundamental norm underlying the sentencing process. ***Commonwealth v. Mouzon***, 571 Pa. 419, 426, 812 A.2d 617, 622 (2002).

Herein, Appellant has satisfied the first three requirements of the four-part test. He timely filed his notice of appeal and preserved his claim in a post-sentence motion. He also includes in his appellate brief his "Statement of Reasons for Allowance of Appeal from Discretionary Aspects of Sentence" in accordance with Pa.R.A.P. 2119(f). Thus, we must next determine whether Appellant has raised a substantial question requiring us to review the discretionary aspects of the trial court's sentence. ***Commonwealth v. Haynes***, 125 A.3d 800, 807 (Pa.Super. 2015).

In his Pa.R.A.P. 2119(f) statement, Appellant contends that "[i]n imposing this unreasonable and excessive sentence, the trial court relied almost entirely upon the nature of the offense and [A]ppellant's prior record- factors already given consideration by the Guidelines- and ignored [A]ppellant's needs for rehabilitation in violation of 42 Pa.C.S.A. § 9721." Appellant further asserts his aggregate sentence "violates many norms of the Sentencing Code and is unreasonable and excessive." Brief for Appellant at 10. These assertions raise substantial questions. ***See Commonwealth v. Caldwell***, 117 A.3d 763, 770 (Pa.Super. 2015) (*en banc*), *appeal denied*, 633 Pa. 774, 126 A.3d 1282 (2015) (stating claim a sentence imposed consecutively was unduly excessive coupled with claim the trial court failed to consider rehabilitative needs raises a substantial question); ***Commonwealth***

*v. Scassera*, 965 A.2d 247, 250 (Pa.Super. 2009), *appeal denied*, 603 Pa. 709, 985 A.2d 219 (2009) (recognizing claim the sentencing court failed to consider applicable sentencing guidelines, prior to exceeding them, presents a substantial question); *Commonwealth v. Ahmad*, 961 A.2d 884, 887 (Pa.Super. 2008) (concluding claim sentencing court failed to consider defendant's individualized circumstances when imposing sentence raises a substantial question); *Commonwealth v. Simpson*, 829 A.2d 334, 338 (Pa. Super. 2003) (stating claim sentencing court "relied on impermissible factors, by considering factors already included in the sentencing guidelines" raises a substantial question).

Thus, we turn to the substantive merits of Appellant's question presented and in doing so employ a well-settled standard of review:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Zirkle*, 107 A.3d 127, 132 (Pa.Super. 2014) (citation omitted), *appeal denied*, 632 Pa. 671, 117 A.3d 297 (2015). In addition, it is axiomatic that the trial court "need not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statute in question, but the record as a whole must reflect the sentencing court's

consideration of the facts of the crime and the character of the offender." ***Commonwealth v. Colon***, 102 A.3d 1033, 1044 (Pa.Super. 2014) (citation omitted); 42 Pa.C.S.A. § 9721(b). As we shall discuss *infra*, we find the trial court complied with this directive herein.

As the trial court in this case had the benefit of a PSI report and a mental health report, ***See*** N.T. Sentence Hearing, 10/14/16, at 17; N.T. Sentence Hearing, 10/20/16, at 23, this Court presumes that it considered all relevant sentencing factors and fashioned an individualized sentence. ***See Commonwealth v. Fowler***, 893 A.2d 758, 766 (Pa.Super. 2005) (stating where the sentencing court had and considered a PSI report, this fact alone adequately supported the sentence, and in light of the court's explicit reliance upon that report, this Court was required to presume it properly weighed the mitigating factors).

Notwithstanding, the trial court detailed its reasons for imposing Appellant's sentence at the sentencing hearings. At the hearing held on October 14, 2016, the trial court recounted Appellant's difficult childhood wrought with physical neglect and abuse which caused him to be placed in foster care at the age of ten and again at thirteen. The court also noted Appellant had significant substance abuse problems and was HIV positive. The court further discussed Appellant's extensive juvenile adjudications and adult convictions, although he was only twenty-five years of age at the time he committed the serious, instant crimes. N.T. Sentencing, 10/14/16, at 17-20.

At the Amended Sentencing Hearing held on October 20, 2016, the trial court referenced its remarks from the prior hearing and stated the reasons for its sentence on the record as follows:

> THE COURT: I did go through, at the original sentencing hearing, all of the information that I have regarding [Appellant] from his presentence investigation including his family background, his health background, his work experience, his substance abuse, which was significant, as well as his mental health status and prior treatment.
>
> Certainly, we also heard from Mr. Lanni -- and thank you again, Mr. Lanni, for being here today.
>
> In review of [Appellant's] significant and lengthy history -- again, as a juvenile, six arrests, six adjudications, four commitments all in New Jersey starting at the age of 17 -- simple assault, possession with intent to deliver, aggravated assault on law enforcement, another simple assault. And then as an adult, six arrests, four convictions, three commitments, two violation hearings, two revocations, again all in New Jersey. Possession with intent to deliver, aggravated assault, and this arson case leading up to after [Appellant] was released from a three-year sentence on that arson case.
>
> He comes to Philadelphia and commits the point of gun robbery on Mr. Lanni.
>
> [Appellant] at 25 years old has a criminal history that reflects very little time where [Appellant] is not engaged somehow in the activity of violent crime, selling drugs, and being high on PCP.
>
> The [S]entencing [G]uidelines create a parameter that we all use in fashioning appropriate sentences along with consideration of all of the other factors including [Appellant's] criminal history, the amount of time that has elapsed between criminal convictions. And it is not an inflexible standard.
>
> Defense counsel has reiterated several times that [Appellant] should have been afforded a greater opportunity to enter into an open guilty plea and take advantage of a much lower, much more advantageous sentence.
>
> He, in fact, was offered in the smart room initially a seven- to 14-year sentence and he rejected that. He was again offered the opportunity to accept responsibility for a much more favorable sentence – second strike notwithstanding. He rejected that.

There are many, many reasons why lenient sentences are offered prior to trial. Unfortunately, after trial, those reasons no longer hold. And a person's decision about whether or not they're going to accept responsibility has to include more than a numbers calculation.

It certainly has to take into account acceptance of responsibility for one's actions. And [Appellant] has never done that. Not to this day.

In arriving at [Appellant's] sentence on October 14, 2016, quite frankly, the second strike issue was not a major component of this [c]ourt's sentence.

The sentence of 11 to 22 years was the sentence that this Court believed, and still believes, is the appropriate sentence under these circumstances, notwithstanding the ruling on the second strike issue, and remains so, notwithstanding the change in the prior record score.

The reasons for this Court's sentence were, and still are, in 25 years, totally the juvenile and the adult record of 12 arrests and ten adjudications/convictions for violent crime with very little space and time in between those convictions, very little consideration toward rehabilitation, toward acceptance of responsibility as a law-abiding member of society.

So, [Appellant], your sentence on the robbery is ten to 20 years. The theft merges. The sentence on the possession of an instrument of crime is one to two years consecutive. And the sentence on the terroristic threats is no further penalty. The total sentence is 11 to 22 years.

[Appellant] is not RRRI eligible. He does get credit for time served. I did recommend a dual diagnosis facility for [Appellant] to be housed to address his mental health and substance abuse issues as well as GED enrollment and vocational counseling.

N.T. Sentencing, 10/20/16, at 23-27.

In addition, in its Opinion filed pursuant to Rule 1925(a), the trial court acknowledged the Sentencing Guidelines recommended a term of sixty (60) months to seventy-two (72) months in prison (+/- twelve (12) months). After reiterating the aforementioned reasons it had placed on the record at the

October 20, 2016, Amended Sentencing Hearing, the court explained the analysis which preceded its sentence as follows:

> The record plainly reflects that when contemplating Appellant's sentence, this [c]ourt considered the nature and gravity of Appellant's offenses and the impact of his crimes on Mr. Lanni. This [c]ourt also considered Appellant's presentence investigation report, which reveals a vast and violent criminal history. At age 25, Appellant already amassed a staggering criminal record that includes multiple violent assaults, drug offenses, arson, and a wholesale defiance of probation/parole. Not only is Appellant a repeat offender, he is a *violent* repeat offender, whose criminal history demonstrates his danger to the community and alarming disregard of its citizens. Given Appellant's abhorrent and continuous criminal behavior, and persistent refusal to rehabilitate into a law abiding citizen, this [c]ourt's sentence of 11 to 22 years' incarceration is thoroughly deserving and justified.

Trial Court Opinion, filed 3/15/17, at 10 (emphasis in original).

Contrary to Appellant's averments, as reflected by the record, the trial court properly considered the factors listed in 42 Pa.C.S.A. § 9721(b) and in doing so did not "double count" the seriousness of the offense when resentencing him. The trial court emphasized not only the gravity of Appellant's crimes, but also their impact upon the victim, the danger Appellant posed to the public and the lack of evidence of remorse and rehabilitation Appellant had displayed. In addition, the court took into account Appellant's troubled childhood and medical issues as is evident upon a review of the October 14, 2016, hearing transcript. The trial court also considered Appellant's personal and rehabilitative needs in fashioning a sentence recommending that Appellant be housed in a dual diagnosis facility to address

his mental health and substance abuse issues and that he be enrolled in a GED program and receive vocational counseling.  N.T. Sentencing, 10/20/16, at 27.

Accordingly, we conclude the trial court did not abuse its discretion when it imposed its sentence on October 20, 2016.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/14/2017